# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONIQUE R. DAVIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN AREA )<br>TRANSIT AUTHORITY, )<br>)<br>Defendant. )<br>) | Case No. 19-cv-660 (APM) |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Plaintiff Monique R. Davis was a passenger on a bus operated by Defendant Washington Metropolitan Area Transit Authority ("WMATA"), which collided with a motorcyclist. Plaintiff claims that the crash caused her severe physical and emotional injuries. She brings four causes of action—(1) negligence, (2) negligent entrustment, (3) negligent hiring, training, retention and supervision, and (4) negligence per se. WMATA moves to dismiss Counts II and III—negligent entrustment and negligent hiring, training, retention and supervision, respectively—because they are barred by sovereign immunity. For the reasons stated below, the court grants Defendant's motion to dismiss these two counts.

### II.  BACKGROUND

#### A.  Factual Background

On April 20, 2016, Plaintiff was a passenger on a bus owned and operated by Defendant WMATA. *See* Compl., ECF No. 1-4 [hereinafter Compl.], ¶ 4. Plaintiff alleges that the WMATA bus driver failed to yield the right of way while making a left turn and collided with a motorcyclist.

*See id.* ¶ 6. Plaintiff asserts that the WMATA bus driver's negligence caused the crash. *See id.* ¶¶ 7–30. Additionally, Plaintiff contends that WMATA acted negligently by failing to investigate, supervise, and train the driver and by believing the driver would operate the bus in a safe manner. *See id.* ¶¶ 31–41. Because of the collision, Plaintiff sustained physical, emotional, and financial injuries. *See id.* ¶ 42.

### B. Procedural Background

Plaintiff filed this action on January 10, 2019, in the Superior Court for the District of Columbia, pleading four causes of action against WMATA: (1) negligence, (2) negligent entrustment, (3) negligent hiring, training, retention and supervision, and (4) negligence per se. *See id.* ¶¶ 44–47.

On March 8, 2019, Defendant filed a Notice of Removal pursuant to 28 U.S.C. § 1446. *See* Notice of Removal, ECF No. 1, ¶ 4. On March 8, 2019, Defendant filed an initial Answer, *see* Answer, ECF No. 3, and a Motion for Partial Dismissal, seeking dismissal of Counts II (Negligent Entrustment) and III (Negligent Hiring, Training, Retention and Supervision), *see* Def.'s Mot. to Dismiss, ECF No. 4 [hereinafter Def.'s Mot.], at 3. Plaintiff filed a timely opposition to Defendant's Motion on March 22, 2019, asking the court to deny Defendant's motion and to allow her to take discovery concerning WMATA's procedures and policies. *See generally* Pl.'s Opp'n, ECF No. 9 [hereinafter Pl.'s Opp'n].

### III. LEGAL STANDARD

WMATA's claim of sovereign immunity implicates the court's subject matter jurisdiction. *See Washington Metro. Area Transit Auth. v. Barksdale-Showell*, 965 A.2d 16, 21 (D.C. 2009). Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a claim for lack of subject matter jurisdiction. When a defendant asserts immunity, the burden shifts to the plaintiff

to establish that the court has subject matter jurisdiction over the causes of action asserted in the complaint. *See Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). A court must accept as true all factual allegations contained in the complaint, but a plaintiff's factual allegations will bear closer scrutiny in resolving a Rule 12(b)(1) motion than in resolving a Rule 12(b)(6) motion for failure to state a claim. *See id.*

## IV. DISCUSSION

WMATA is a transit authority that was created by an interstate compact signed by Maryland, Virginia, and the District of Columbia and enacted via Congressional consent (the "WMATA Compact"). *See* Pub. L. No. 89–774, 80 Stat. 1324 (1966) (codified as amended at D.C. Code § 9–1107 *et seq.*). WMATA enjoys sovereign immunity, except to the extent that the WMATA Compact waives it. *See* Def.'s Mot. at 3–4. The WMATA Compact states:

> [T]he Authority, shall be liable . . . for its torts and those of its Directors, officers, employees and agents committed in the course of any proprietary function . . . but shall not be liable for any such torts occurring in the performance of a governmental function . . . . Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.

D.C. CODE § 9–1107.01(80) (2014). This provision waives sovereign immunity for torts committed when performing a ministerial, non-governmental function. *See id.* Conversely, WMATA is immune for torts occurring while carrying out a governmental function. *Id.* There are two alternative tests for identifying a "governmental" function—whether an activity is a "quintessential [] governmental function" or whether it is "discretionary." *See Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997); *see also Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997).[1] A discretionary activity is "one that involves choice or judgment" based on

---

[1] It is a federal question whether a specific function of WMATA is governmental. *See Sanders v. WMATA*, 819 F.2d 1151, 1154 (D.C. Cir. 1987).

3

considerations of public policy. *See U.S. v. Gaubert*, 499 U.S. 315, 325 (1991) (holding that discretionary activity can include operational activities and "is not confined to the policy or planning level"). A court looks to whether a statute, regulation, or policy "specifically prescribes a course of action for an employee to follow." *Burkhart*, 112 F.3d at 1217. If not, it then decides whether "the exercise of discretion is grounded in social, economic, or political goals." *Beebe*, 129 F.3d at 1287 (citation omitted). If so grounded, the activity is governmental and sovereign immunity applies. *See id*.

In *Burkhart*, the D.C. Circuit held that decisions concerning the hiring, training, retaining, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review. *Burkhart*, 112 F.3d at 1217. As the court found, the WMATA Compact confers upon the Authority "broad power to create and abolish employments and provide for the qualification, appointment, and removal of its employees . . . establish, in its discretion, a personnel system based on merit and fitness . . . and control and regulate the service to be rendered." *Id.* (citing D.C. law) (cleaned up). "These provision[s] hardly constrain WMATA's determination of whom it will employ or how it will train and supervise such employees. Thus, WMATA has choices to make." *Id.* In addition, the court ruled that such decisions involve the exercise of political, social, and economic judgment. *See id.* Thus, a straightforward application of *Burkhart* compels dismissing Plaintiff's negligent hiring, training, retention and supervision cause of action.

For the same reasons, Plaintiff's second cause of action—negligent entrustment—is dismissed. Plaintiff alleges that WMATA breached a duty of care "when it entrusted its vehicle to the WMATA bus driver who it knew, or should have known, would not handle the vehicle consistent with the vehicular safety rules then and there in effect and would endanger other persons traveling in the bus and on the road." Compl. ¶ 37. In other words, Plaintiff claims that WMATA

4

should not have put the driver on the road because it knew she was not qualified or adequately trained to operate a bus. But such judgments lie beyond the reach of common law torts. As the court explained in *Burkhart*, "supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety." *Burkhart*, 112 F.3d at 1217. Similarly, "[t]he extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past." *Id.* These types of decisions are "among those involving the exercise of political, social, or economic judgment." *Id.* So, Plaintiff's negligent entrustment claim is simply a negligent supervision or training claim by a different name. Plaintiff's second cause of action for negligent entrustment is therefore subject to the sovereign immunity bar.

Plaintiff attempts to avoid dismissal by asserting that she "seeks to use the discovery process to determine whether or not WMATA has policies regarding hiring, training, retention, and supervision criteria," as well as "entrustment criteria." Pl.'s Opp'n at 6–7. She distinguishes *Burkhart* by insisting that the plaintiff there "failed to make the threshold evidentiary showing" that there was no discretionary judgment involved; whereas, here she wishes to make such a showing based on WMATA's policies. *Id.* at 6. But Plaintiff misreads *Burkhart*. There, the D.C. Circuit found that WMATA's employee hiring, training, and supervision decisions were immune based on the text of the WMATA Compact itself, not any particular internal policy or process. *See Burkhart*, 112 F.3d at 1217 (observing that the WMATA Compact "hardly constrain WMATA's determination of whom it will employ or how it will train and supervise such employees"). Accordingly, discovery offers no prospect for avoiding the immunity bar set forth in *Burkhart*.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Partial Dismissal is granted. Counts II and III are dismissed with prejudice.

Dated: June 3, 2019

Amit P. Mehta
United States District Court Judge